IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALAN GIBBONS, | ) | CASE NO. 5:11 CV 737 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action under 42 U.S.C. § 405(g) by Alan Gibbons for judicial review of the decision of the Commissioner of Social Security denying his applications for disability insurance benefits (DIB) and supplemental security income (SSI).[2] The Commissioner has answered and filed the transcript.[3] The parties have briefed their positions[4] and further, pursuant to my initial order,[5] filed supplemental fact sheets and charts.[6] They have

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 11. Accordingly, United States District Judge Dan Aaron Polster has transferred this matter to me for further proceedings. ECF # 12.

[2] ECF # 1.

[3] ECF # 9 (Commissioner's answer); ECF # 10 (transcript).

[4] ECF # 17 (Gibbons's brief); ECF # 18 (Commissioner's brief).

[5] ECF # 5.

[6] ECF # 14 (Gibbons's fact sheet); ECF # 18, Attachment (Commissioner's chart).

participated in oral argument.[7] For the reasons that follow, I will find that the Commissioner's decision is not supported by substantial evidence and so the matter must be remanded for further proceedings.

## Facts

**A.     The ALJ's decision**

Alan Gibbons, who was 40 years old at the time of the hearing,[8] is a high school graduate who then attended college for two years.[9] Gibbons has past relevant work as a dispatcher, bank teller, gas station attendant, customer service clerk, and a data entry clerk.[10] He was incarcerated from June of 2003 until May 7, 2007, and now lives with his parents.[11]

The ALJ found that Gibbons had the following severe impairments: Crohn's disease; fistula; and left leg dystrophy.[12] That said, the ALJ determined, in accord with the opinion of state agency consultants, that these impairments did not meet or equal any listed impairment.[13]

---

[7] ECF # 20.

[8] Tr. at 115.

[9] *Id*. at 33.

[10] *Id*. at 39-40.

[11] *Id*. at 32.

[12] *Id*. at 11.

[13] *Id*. at12.

After reviewing Gibbons's testimony about pain, fatigue, and weakness caused by the Crohn's disease and the fistula, and after assigning partial weight to the opinions of Gibbons's treating physician, Michael Cline, D.O., the ALJ determined that Gibbons had the residual functional capacity (RFC) to perform a range of sedentary work.[14] Specifically, the ALJ found that:

> [Gibbons] can lift, carry, push and pull ten pounds occasionally and 5 pounds frequently. He can sit for six hours and stand and/or walk for two hours in a normal workday. He requires the ability to change positions briefly (for one minute or less) every 60 minutes. He must have ready access to a restroom facility in the workplace. He should never kneel, crouch, or crawl and is limited to occasionally climbing and balancing.[15]

Based on this RFC, the ALJ found, in conformity with the testimony of a vocational expert, that Gibbons was capable of performing his past relevant work as a dispatcher, customer service clerk, and data entry clerk.[16]

Accordingly, the ALJ concluded that Gibbons was not disabled and denied the applications for benefits.[17]

**B.   Issues on judicial review**

The issues here raised by Gibbons relate to whether the RFC finding is supported by substantial evidence. In that regard, he argues:

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 15.

[17] *Id.* at 16.

1. Was appropriate weight given to the opinion of Dr. Cline, Gibbons's treating physician?

2. Did the ALJ fail to use appropriate legal standards in the evaluation of the Crohn's related symptoms and their impact upon Gibbons's residual functional capacity?

3. Is the ALJ's RFC finding – that Gibbons's need to change position can be accommodated by a one minute or less change every 60 minutes – supported by substantial evidence?[18]

## Analysis

**A. Standard of review – substantial evidence**

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

---

[18] ECF # 14 at 1.

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standard**

This is a case where the central issue is whether there is substantial evidence to support two determinations by the ALJ: (1) the finding in the RFC that Gibbons requires a brief period each hour within which to change positions, and (2) the determination that Gibbons's complaints about fatigue and incontinence were not fully credible.

*1.     Dr. Cline's opinions and the RFC*

Gibbons argues here that the RFC finding that he needs to be able to change positions for one minute or less every sixty minutes is based on a partial and not adequately explained rejection of Dr. Cline's opinion, and so that finding is not supported by substantial evidence.[22]

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] ECF # 17 at 12-15; Tr. at 305.

Initially, I note that both Gibbons and the Commissioner acknowledge that Dr. Cline offered no opinion as to exactly how often Gibbons needed to alternate positions each hour or for how long such alternations needed to be but merely opined that Gibbons's impairments would preclude him from standing "for any length."[23] That said, I further note that the ALJ did explicitly "give weight" to "Dr. Cline's opinion that the claimant needs an hourly sit-stand option and have included that limitation herein."[24]

Thus, Gibbons's complaint here is that the ALJ erred by specifying in the RFC that Gibbons needed to alter positions "briefly (for one minute or less)" during every hour, without explicit medical evidence in the record concerning any time period for changing positions. Indeed, Gibbons asserts that because there was no precise length of time called for by Dr. Cline's limitation, the ALJ in this case – by stating that the position change was for a minute or less – improperly assumed a "diagnostic expertise" that he does not possess, thus requiring that this matter be remanded for additional evidence from Dr. Cline or some other medical expert.[25]

---

[23] ECF # 17 at 15 (Gibbons's brief) ("Regrettably, while Dr. Cline reported that the Plaintiff needs to periodically alternate position, he did not identify the length of time required."); ECF # 18 at 10 (Commissioner's brief) ("Dr. Cline did not specify how often Plaintiff needed to alternate sitting and standing, only that Plaintiff's impairments prevented him from standing 'for any length.' (Tr. 305)").

[24] Tr. at 14.

[25] ECF # 17 at 15.

It is well-recognized that "the ALJ – not a physician – ultimately determines the claimant's RFC."[26] To that point, SSR 96-8p provides that the RFC "must be based on *all* of the relevant evidence in the record, only *one* of which is medical source statements, thus indicating that a medical source statement is not the only determinative factor in determining RFC."[27] That said, however, it is also well-recognized that "[w]hen considering the medical evidence and calculating the RFC, 'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'"[28] Specifically, this prohibition means that "the ALJ may not interpret raw medical data in functional terms."[29]

This case, however, does not involve an ALJ interpreting raw medical *data*. Indeed, there was an *opinion* as to function given by Dr. Cline, and that opinion was expressly given weight and adopted by the ALJ. Thus, contrary to Gibbons's position, this case is not about an ALJ impermissibly "playing doctor" by creating an RFC absent an opinion as to function from a medical source. The claimant's argument, rather, is that because Dr. Cline failed to

---

[26] *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(b)).

[27] *Fleming v. Astrue*, No. 1:09cv373, 2010 WL 649742, at *9 (N.D. Ohio Feb. 19, 2010) (citation omitted).

[28] *Tucker v. Astrue*, No. No. 2:11-CV-858, 2012 WL 3561987, at *8 (S.D. Ohio Aug. 17, 2012) (quoting *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotation omitted).

[29] *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (citation omitted).

opine on the specific length of the position change period needed by Gibbons, there is not substantial evidence to support *any* RFC finding in that particular regard.

This is similar to the argument made before a Tennessee District Court recently in *Hammonds v. Commissioner of Social Security*.[30] In that matter, the Court initially noted that "[o]ne would think that such a lack of evidence would result in a defeat for the Plaintiff, who bears the burden to present evidence showing the extent of [his] impairments."[31] Instead, the Court in *Hammonds* noted that where there was (1) a medical *opinion* as to the claimant's RFC as well as (2) direct *evidence* of the exact nature of the limitation described in the opinion, the ALJ was not required to procure any additional evidence before arriving at the RFC finding.[32]

The analysis in *Hammonds* is applicable here. This case contains an opinion by Dr. Cline to the effect that Gibbons's impairments would preclude him from standing "for any length."[33] There is also considerable other evidence, discussed by the ALJ in connection with this finding in the RFC, that Gibbons "can sit, stand and walk in the sedentary range."[34] Those two sources must be considered together. Indeed, it was in connection with the finding

---

[30] *Hammonds v. Comm'r of Soc. Sec.*, No. 2:10-CV-121, 2011 WL 3328394 (E.D. Tenn. July 22, 2011).

[31] *Id.*, at *7 (citation omitted).

[32] *Id.*, at *8 (citations omitted).

[33] Tr. at 305.

[34] Tr. at 14.

regarding Gibbons's sitting, standing, and walking functions that the ALJ provided the hourly sit-stand limitation addressing the limitation raised in Dr. Cline's opinion.[35]

Thus, I find that the ALJ based the now-disputed RFC finding on both the opinion of Dr. Cline and the other evidence concerning Gibbons's sitting, standing, and walking. As such, there is substantial evidence apart from Dr. Cline's opinion – but consistent with it – to support the conclusion of the RFC that Gibbons requires a brief period each hour to change positions.

## 2. *Credibility as to effect of acknowledged impairments on RFC*

Gibbons argues here that the ALJ gave insufficient reasons for rejecting his testimony about the extent and severity of his Crohn's disease.[36] In particular, he contends that: (1) the ALJ did not address notes from a prior treating physician that were consistent with the disease symptoms described by Gibbons, and (2) the ALJ selectively used the fact that Dr. Cline's notes showed no complaints of fatigue or frequent bowel movements while not considering complaints in that regard contained in other medical sources.[37]

As the Commissioner points out, this issue essentially relates only to Gibbons's complaints of fatigue, since the RFC here provides that Gibbons needs to have "ready access to a restroom facility in the workplace."[38]

---

[35] *Id.*

[36] ECF # 17 at 17.

[37] *Id.* at 17-18.

[38] ECF # 18 at 12 (citing Tr. at 12).

Gibbons testimony as to fatigue was that due to being "extremely tired and drowsy all the time," he falls asleep each day at noon and naps until 4:00 pm.[39] The ALJ, however, noted that Dr. Cline's opinion was that Gibbons could sit for "less than" six hours in a workday and stand/walk for less than two hours.[40] The ALJ determined that there was no "objective evidence" to support the "less than" limitation, observing that Gibbons had a "wide range" of daily activities, was not limited during his time in prison, and that there was no evidence in Dr. Cline's progress notes going to that proposed limitation.[41]

Initially, I am concerned that the absence of a treatment note on fatigue is used as proof that there is no fatigue. It is clear that had Gibbons complained of fatigue to Dr. Cline and that complaint was recorded; such a notation in the chart would be regarded as merely the memorializing of a subjective complaint not as objective medical evidence.

Most important, however, is the reliance by the ALJ on Gibbons's daily activities as proof of no fatigue without a discussion of Gibbons's testimony on a daily four-hour nap at midday. If the ALJ were to conclude that Gibbons's testimony of his daily activities, taken all together, are not consistent with Gibbons's claim of extreme fatigue, then a fair treatment of that evidence must take into account the testimony concerning a daily nap. Because that was not done, it appears that the ALJ impermissibly "cherry-picked" only portions of the testimony on daily activities that undercut the claim of fatigue while ignoring parts of that

---

[39] Tr. at 12-13.

[40] *Id*. at 14.

[41] *Id*.

exact same testimony that supported it.[42] This failure to even consider or discuss contrary evidence within the same body of evidence relied on by the ALJ makes this situation different from those where what was claimed to be "cherry-picking" was actually a reviewable weighing of conflicting evidence by the ALJ.[43] As such, I find that the conclusion here that Gibbons's acknowledged impairment of Crohn's disease does not result in extreme fatigue is not supported by substantial evidence, and so the matter must be remanded.

## Conclusion

For the reasons stated, the I find that the decision of the Commissioner here is not supported by substantial evidence, and, therefore, the matter is remanded for further proceedings consistent with this opinion.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[44] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.

Dated:   September 24, 2012                    s/ William H. Baughman, Jr.
                                               United States Magistrate Judge

---

[42] *See*, *Washington-Fisk v. Comm'r of Soc. Sec.*, No. 2:11-CV-15117, 2012 WL 4007831, at *9 (E.D. Mich. Aug. 17, 2012) (citations omitted).

[43] *See*, *Dietz v. Astrue*, No. 1:11CV1541, 2012 WL 3815621, at *12 (N.D. Ohio Aug. 1, 2012) (citations omitted).

[44] 28 U.S.C. § 2412(d)(1)(A).